

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ERNESTO POUX, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:10-00433-HFF-TER |
| | § | |
| FCI BENNETTSVILLE, SC, S/S/LT | § | |
| MAILROOM; FCI BENNETTSVILLE, | § | |
| SC, SHU OFFICERS; FCI BENNETTSVILLE, | § | |
| SC, C-UNIT MANAGER; LT. J. EDWARDS; | § | |
| LT. S. MORRISON; LT. MS. T. LEWIS; | § | |
| LT. D. HUDSON; MS. S. CARTWRIGHT; | § | |
| JOHN DOES; and JANE DOES, | § | |
|     Defendants. | § | |

## ORDER

This case was filed as a *Bivens* action. Plaintiff is proceeding pro se. The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting that Defendants' motion to dismiss or for summary judgment be granted and that the claim be dismissed for failure to exhaust administrative remedies. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on November 1, 2010, and the Clerk of Court entered Plaintiff's objections to the Report on November 19, 2010.

Plaintiff objects to the Magistrate Judge's recommendation that his claims be dismissed for failure to exhaust all available administrative remedies. Liberally construing Plaintiff's objections and pleadings, he asserts that he failed to exhaust administrative remedies because prison officials prevented him from doing so, thereby rendering the administrative remedies unavailable to him. Specifically, he insists that the fear of retaliatory violence from a prison official prevented him from filing a grievance with respect to his claim that an officer threatened him. As for his other claims relating to the failure to protect him from other inmates, his subjection to smoke inhalation, the retaliation by preventing him from filing papers with the court, and the destruction of his personal property, he maintains that his unit counselor failed to file his grievances, thus denying him the ability to exhaust his administrative remedies. The Court finds Plaintiff's objections to be without merit.

The Prison Litigation Reform Act of 1995 (PLRA) requires that "prisoners . . . exhaust such administrative remedies as are available prior to filing suit in federal court challenging prison conditions." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (internal quotation marks omitted) (quoting 42 U.S.C. § 1997(e)(a)). Before bringing suit in federal court, "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Although the PLRA lacks a definition for the term

2

*available*, the Fourth Circuit has interpreted it to mean that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Id.* Thus, administrative remedies are considered unavailable in situations in which "prison officials prevent inmates from using the administrative process." *Hill v. Haynes*, No. 08-7244, 2010 WL 2182477, at *2 (4th Cir. June 2, 2010) (internal quotation marks omitted) (quoting *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). District courts have an obligation "to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Id.* (internal quotation marks omitted) (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

As for Plaintiff's claims relating to the failure to protect him from other inmates, his subjection to smoke inhalation, the retaliation by preventing him from filing papers with the court, and the destruction of his personal property, he states in his objections that he "turned his initial filings over to Counselor Leamon for filing" but that Counselor Leamon failed to file them. This inaction, he maintains, thwarted his ability to exhaust his administrative remedies, thus making them unavailable. To support his contention, he attached a "Documentation of Informal Resolution Attempt," which he claims to constitute his "administrative remedy appeals regarding the failure of Counselor Leamon to file Plaintiff's administrative remedies." In the attachment, he provides a document that outlines his attempts to exhaust his administrative remedies.

According to Plaintiff, on February 14, 2010, he filed a BP-10, and he received a rejection notice on March 8, 2010, which stated that he must first file a BP-9. He insists that on March 12, 2010, he submitted his properly completed BP-9 to Case Manager Ms. Brown, who purportedly then gave it to Counselor Leamon to file. He proceeds to outline his further attempts to follow up on the

BP-9, maintaining that Counselor Leamon failed to submit his filings, including the initial BP-9, and that Counselor Leamon eventually returned the forms to him on October 28, 2010, without having ever filed them.

Although Plaintiff maintains that prison officials prevented him from exhausting his administrative remedies, the fact remains that Plaintiff filed suit in federal court before the remedies became unavailable to him. Plaintiff instituted the civil action in this Court by a letter dated February 16, 2010, and entered by the Clerk of Court on February 26, 2010.[*] Therefore, Plaintiff instituted this civil action before he submitted his BP-9 on March 12, 2010. In fact, he filed suit before he even received notice of the rejection of his BP-10 on March 8, 2010. Assuming the veracity of all of Plaintiff's allegations, he failed to let his administrative remedies run their course and filed suit in federal court well before the actions transpired that prevented him from exhausting his administrative remedies. Accordingly, the Magistrate Judge was correct in recommending dismissal of Plaintiff's above-referenced claims because, at the time he filed the action, he had failed to exhaust or attempt to exhaust his administrative remedies.

As for his claim relating to the "threat of harm by Lt. Hudson," Plaintiff admits in his objections that he "did not file . . . administrative remedies." The underlying claim, according to Plaintiff's complaint, maintains that he and his cellmate were taken to Lt. Hudson's office, where Plaintiff "was told by him 'that he would beat [Plaintiff's] *** [and] that he would come in [Plaintiff's] cell and take the handcuffs of[f] and then beat [Plaintiff's] ***.' " Plaintiff insists that

---

[*]After the Magistrate Judge issued a Proper Form Order, Plaintiff followed up with a court-approved complaint, which he completed on March 22, 2010, and was entered by the Clerk of Court on March 26, 2010. In his court-approved complaint, he indicated that he had neglected to file a grievance pertaining to the claims raised in the complaint.

he was "threatened by [Lt. Hudson] for asking to be moved, and they [had] seen blood on [Plaintiff's] cellmate who had a scuff[le] with Officer Loury in pulling . . . him hard into the tray slot cutting his arm." In Plaintiff's objections, he insists that Lt. Hudson "has a violent history of beating inmates," and so he was afraid to pursue his administrative remedies out of fear of violent repercussions. Although Plaintiff was fearful of pursuing administrative remedies, he did "contact several agencies," including organizations like the NAACP, Rainbow Push Co., and National Urban League.

A number of United States Courts of Appeals have held that prison officials' threats of violence can render administrative remedies unavailable. *See, e.g.*, *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008); *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary firmness from pursuing administrative remedies. *See Turner*, 541 F.3d at 1085; *Kaba*, 458 F.3d at 684-86; *Hemphill*, 380 F.3d at 688.

The Court finds that a prisoner of ordinary firmness in Plaintiff's situation would not have been dissuaded from pursuing administrative remedies. Unlike in *Turner*, *Kaba*, and *Hemphill*, Plaintiff does not allege that officers threatened retaliation if he pursued administrative remedies. Moreover, Plaintiff's fear of violence stems from Lt. Hudson's purported violent reputation, but nothing suggests that the officer reacts violently toward inmates who pursue their administrative remedies. Finally, the threat underlying Plaintiff's claim was simply too isolated and the fear of violence is too speculative to excuse Plaintiff from pursuing his administrative remedies. Because neither the threat nor the reputation of violence appears to be directed at inmates who pursue their

administrative remedies, the Court finds that prisoners of ordinary firmness in Plaintiff's situation would not have been prevented from pursuing their administrative remedies. Therefore, although the Court recognizes its obligation "to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials," *Hill*, 2010 WL 2182477, at *2 (internal quotation marks omitted) (quoting *Aquilar-Avellaveda*, 478 F.3d at 1225), it is of the opinion that the officer's purported threat and the fear of violence was not enough to prevent Plaintiff from pursuing his administrative remedies.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Plaintiff's objections, adopts the Report to the extent it is consistent with this Order, and incorporates it herein. Therefore, it is the judgment of this Court that Defendants' motion to dismiss or for summary judgment be **GRANTED** as to Plaintiff's federal claims and that Plaintiff's federal claims be **DISMISSED** *without prejudice* for failure to exhaust administrative remedies. To the extent that Plaintiff asserts any state law claims, such claims are **DISMISSED** *without prejudice* so that he can file them in state court if he wishes to do so.

**IT IS SO ORDERED**.

Signed this 8th day of December, 2010, in Spartanburg, South Carolina.

s/ Henry F. Floyd  
HENRY F. FLOYD  
UNITED STATES DISTRICT JUDGE

*****

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this Order within 60 days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.